UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CURTIS ROWE and ROWE FOOD HOLDINGS, LLC, | ) ) ) | |
| | ) | 16 C 9917 |
| Plaintiffs, | ) ) | Judge Gary Feinerman |
| vs. | ) ) | |
| CHECKERS DRIVE-IN RESTAURANT, INC, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Curtis Rowe and his company (together, "Rowe") allege in this suit that Checkers Drive-In Restaurant, Inc. discriminated against him in violation of 42 U.S.C. § 1981 when it declined to enter into franchise agreements with him to operate two Checkers restaurants. Doc. 1. Checkers moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss on statute of limitations grounds Rowe's claim as to one of the restaurants. Doc. 22. The motion is granted, but Rowe will have the opportunity to replead that claim.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Rowe's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013). The facts are set forth as favorably to Rowe as those materials allow. *See Pierce v. Zoetis*, 818 F.3d

1

274, 277 (7th Cir. 2016). In setting forth those facts at the pleading stage, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

In 2008, Rowe and Checkers entered into a franchise agreement for Rowe to operate a Checkers restaurant in Dixmoor, Illinois. Doc. 1 at ¶¶ 2, 7. The restaurant opened in 2009. *Id*. at ¶ 7. In 2011, Rowe and Checkers entered into a second franchise agreement for a restaurant on the south side of Chicago. *Id*. at ¶ 8. Both restaurants have been successful and profitable. *Id*. at ¶ 9. Rowe is the only African-American Checkers franchisee in the Chicago market, and one of only a few nationwide. *Id*. at ¶ 10.

In 2012, Rowe sought to purchase an existing Checkers restaurant at 5451 South Wentworth Avenue in Chicago from a franchisee looking to retire. *Id*. at ¶ 11. Checkers previously had declined to purchase the restaurant from the franchisee, but after the franchisee sought Checkers's approval to sell to Rowe, Checkers exercised its option to purchase the restaurant rather than allowing Rowe to do so. *Ibid*. Checkers executed the purchase contract on July 5, 2012. Doc. 22-1. This marked the first time that Checkers exercised its right of first refusal to block a current franchisee from acquiring an existing restaurant. Doc. 1 at ¶ 12. Checkers afterwards promised that it would "make it up to [Rowe]" by helping him expand and by waiving the franchise fee on his next restaurant. Doc. 30 at 4.

In 2016, Rowe proposed opening a restaurant at 10258 South Halsted Street in Chicago. Doc. 1 at ¶ 13. Local Checkers representatives told him it was a "great site," and the franchise was conditionally approved in August 2016. *Id*. at ¶¶ 15-16. However, Checkers then insisted on conducting a market study because the Halsted site would be less than two miles from an existing Checkers restaurant. *Id*. at ¶ 18. Checkers insisted on this study even though the

Halsted site had previously been a Checkers restaurant and had coexisted with the other nearby site. *Id*. at ¶ 17. Moreover, Checkers's franchise offering requires impact studies only for locations within one mile (not two miles) of one another. *Id*. at ¶¶ 19-20. For other recently proposed sites in the Chicago area within two miles of existing restaurants, Checkers did not require an impact study. *Id*. at ¶ 21. Those sites were not opened by African-Americans or African-American owned entities. *Id*. at ¶ 22. Checkers ultimately denied approval of Rowe's proposed Halsted site, citing the impact study. *Id*. at ¶ 23.

Rowe filed this suit on October 21, 2016. Doc. 1. He alleges that Checkers's purchase of the Wentworth restaurant and denial of his request to open the Halsted site violated his right under 42 U.S.C. § 1981 to make and enforce contracts. *Id*. at ¶¶ 27-37.

## Discussion

Checkers argues that Rowe's claim as to the Wentworth location is time-barred. It submits that a two-year statute of limitations applies because the claim rests on Checkers's unwillingness to enter into a new contract, not its discriminatory performance of an existing contract. Doc. 22 at 4. Rowe counters that the Checkers's purchase of the Wentworth location was in fact a deprivation of the "benefits, privileges, terms and conditions of the franchise relationship," making it actionable under § 1981(b) and thus subject to a four-year statute of limitations. Doc. 30 at 7 (brackets omitted). The parties also disagree about the date that Rowe's Wentworth claim accrued. Checkers argues that the claim accrued in July 2012, when it purchased the Wentworth location from the existing franchisee. Doc. 22 at 6. Rowe contends that it accrued only when he knew or had reason to know that the harm he suffered (being deprived of the chance to purchase the restaurant) was the product of intentional racial discrimination. Doc. 30 at 4. In his view, that did not occur until the 2016 rejection of his

3

proposed Halsted location prompted him to learn more about Checkers's practices, which in turn alerted him to the deviations from past practice that he believes are evidence of racial discrimination. *Id*. at 5-6.

As to the accrual date, Checkers is correct. "A plaintiff's action accrues when he discovers that he has been injured, not when he determines that the injury was unlawful." *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir. 1995); *see also Jamison v. Urban*, 411 F. App'x 919, 921 (7th Cir. 2011); *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 240 (7th Cir. 2004). The injury was the loss of the opportunity to purchase the restaurant at the Wentworth site. That injury occurred on July 5, 2012, when Checkers exercised its option to purchase the restaurant, as shown by the contract attached as an exhibit to the motion to dismiss. Although exhibits to a Rule 12(b)(6) motion ordinarily may not be used to support dismissal, Rowe acknowledges that considering the contract is proper here. Doc. 30 at 2. Furthermore, at the hearing on the motion, Rowe conceded the factual accuracy of the July 2012 date. So Rowe was on notice of his injury in July 2012, thus triggering the limitations period.

Rowe cites *Moskowitz v. Trustees of Purdue University*, 5 F.3d 279 (7th Cir. 1993), for the proposition that the "discovery rule" provides that a discrimination claim does not accrue until the plaintiff suspects discrimination. Doc. 30 at 4. This misreads *Moskowitz*, which speaks not to when a claim accrues, but rather to when the equitable tolling doctrine tolls the statute of limitations due to the plaintiff's inability to know of the wrongful nature of the defendant's act. As *Moskowitz* explained:

> Under the doctrine of equitable tolling … a person injured by an unlawful act need not sue until he knows, or through the exercise of reasonable diligence would have known, not only that he has been injured (for once he discovers that, *his cause of action has accrued and the statute of limitations begins to run*) but also that he has been injured by a possibly wrongful act of the defendant.

4

5 F.3d at 281 (emphasis added). In *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir. 1990), the Seventh Circuit observed that the equitable tolling doctrine "permits a plaintiff to avoid the bar of the statute of limitations if *despite all due diligence* he is *unable* to obtain vital information bearing on the existence of his claim." *Id.* at 451 (emphasis added). In so doing, the court specifically addressed the distinction between the equitable tolling doctrine and the discovery rule:

> [T]he plaintiff is assumed to know that he has been injured, so … the statute of limitations has begun to run; but he cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant. If a reasonable man in [the plaintiff's] position would not have known until [the relevant date] that he had been fired in possible violation of the age discrimination act, he could appeal to the doctrine of equitable tolling to suspend the running of the statute of limitations for such time as was reasonably necessary to conduct the necessary inquiry. The qualification "possible" is important. If a plaintiff were entitled to have all the time he needed to be *certain* his rights had been violated, the statute of limitations would never run—for even after judgment, there is no certainty.

*Ibid*.

As noted, the injury triggering the statute of limitations for the Wentworth claim occurred on July 5, 2012, so that is the date on which the statute began to run. To support an equitable tolling argument, Rowe must allege facts supporting the inference that even with reasonable diligence, he could not have known that he had a potential claim against Checkers. But Rowe's allegations do not do this. His basis for concluding that Checkers's exercising its option on the Wentworth location was a discriminatory is the allegation that Checkers had never done that before. There was no barrier to Rowe's obtaining that information prior to 2016, and nothing in the complaint or his opposition brief suggests that he exercised reasonable diligence in this regard. It follows that he cannot invoke the equitable tolling doctrine. *See Clarke v. United States*, 703 F.3d 1098, 1101 (7th Cir. 2013) ("The petitioner cannot avail herself of equitable

5

tolling because she flunked diligence."); *Prime Eagle Grp. Ltd. v. Steel Dynamics, Inc.*, 614 F.3d 375, 379 (7th Cir. 2010) ("Prime Eagle has been anything but diligent and cannot use equitable tolling to justify the untimely filing.").

Rowe next argues that a different doctrine, equitable estoppel, saves his Wentworth claim. According to Rowe, the Checkers representative's statement after it exercised its option on the Wentworth location that it would "make it up to [Rowe]" estops Checkers from asserting a limitations defense. Doc. 30 at 6-7. Rowe is incorrect.

Equitable estoppel "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations." *Cada*, 920 F.2d at 450-51. Generally, equitable estoppel is premised on "(1) a showing of the plaintiff's actual and reasonable reliance on the defendant's conduct or representations and (2) evidence of improper purpose on the part of the defendant or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct." *Mull v. ARCO Durethene Plastics, Inc.*, 784 F.2d 284, 292 (7th Cir. 1986) (internal quotation marks omitted). "Pursuant to this standard, courts have held that an employer's attempts to lessen the adverse impact of an employment decision will not as a matter of law serve to toll the limitations period." *Ibid.* (collecting cases); *see also Hedrich v. Bd. of Regents of Univ. of Wis. Sys.*, 274 F.3d 1174, 1182 (7th Cir. 2001) (holding that the defendant university's decision to permit the plaintiff assistant professor to internally appeal the denial of tenure did not trigger equitable estoppel); *Hamilton v. Komatsu Dresser Indus., Inc.*, 964 F.2d 600, 606 (7th Cir. 1992) (holding that permitting employees to undertake training for a position for which they may have been medically disqualified did not trigger equitable estoppel).

The facts Rowe alleges here are insufficient to successfully invoke equitable estoppel, for none suggest that he decided not to sue Checkers earlier in actual reliance on its representative's statements. Indeed, Rowe contends that he had no reason to believe he had been wronged until 2016, a contention inconsistent with a desire to sue earlier that was forestalled only by Checkers's statements. As noted, equitable estoppel requires that the defendant take steps to *prevent* the plaintiff from suing. Thus, even if Checkers's representations had the effect of discouraging Rowe from taking legal action, this would be insufficient to invoke equitable estoppel. The facts alleged here place this matter squarely within the rubric of "attempts to lessen the adverse impact of an employment decision," which *Mull* makes clear are not grounds for equitable estoppel.

In a final effort to save his Wentworth claim, Rowe argues that the events of 2012 and 2016 constitute on ongoing pattern of discrimination, thus allowing him to invoke the "continuing violation doctrine," which permits otherwise time-barred actions to go forward if they are part of an ongoing pattern of discrimination. Doc. 30 at 6; *see Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 723 (7th Cir. 2004). This argument fails. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Thus, as the Seventh Circuit explained, the continuing violation doctrine "does not apply to a series of discrete actions, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing." *Gajewski v. Ocwen Loan Servicing*, 650 F. App'x 283, 286 (7th Cir. 2016). That is, the doctrine cannot be invoked to "resurrect prior, untimely claims" where such claims would have been actionable on their own. *Ibid.*; *see also Groesch v. City of Springfield*, 635 F.3d 1020,

7

1027 (7th Cir. 2011) (discussing the development of the continuing violation doctrine and explaining that each discrete actionable event has its own limitations period).

Rowe alleges two potentially discriminatory acts: Checkers's 2012 purchase of the Wentworth location, and its 2016 denial of his proposal to open the Halsted location. Because the 2012 act was independently actionable, the continuing violation doctrine cannot save that claim from dismissal on limitations grounds. *See Gajewski*, 650 F. App'x at 287 (holding that untimely claims asserting discrete and independently actionable violations of the Fair Debt Collection Practices Act were not rendered timely by subsequent allegations of related events that fell within the limitations period); *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 436 (7th Cir. 2009) (rejecting a continuing violation argument where the defendant's actions "constituted separate, discrete acts, even one of which would have given rise to a cause of action").

In sum, on the facts alleged, Rowe's Wentworth claim accrued in July 2012, when Checkers exercised its option to purchase that restaurant. That claim is time-barred regardless of whether it is governed by a two-year or four-year statute of limitations, as Rowe did not file suit until October 2016. So there is no need at this point to decide which limitations period applies.

## Conclusion

Checkers's motion to dismiss is granted, and Rowe's claim regarding the Wentworth restaurant is dismissed. The dismissal is without prejudice to Rowe repleading that claim if he can allege facts supporting equitable tolling, equitable estoppel, or some other doctrine that would save the claim from dismissal on limitations grounds. *See Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint … ."). If Rowe wishes to file an amended complaint,

he must do so by May 3, 2017.  If Rowe files an amended complaint, Checkers shall answer or otherwise plead by May 17, 2017; if he does not, Checkers shall answer the surviving portions of the current complaint by May 10, 2017.

April 12, 2017

                                      United States District Judge